UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

EDWARD JAMES CROMER,

                Plaintiff,                Case No. 2:13-cv-15

v.                                  Honorable Robert Holmes Bell

C. MASKER, et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Edward James Cromer, a state prisoner confined at the Marquette Branch Prison, filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants Librarian C. Masker, Officer C. Hoffman, fellow prisoner Cecil Hawkins #205069, and Librarian Unknown Younkins.  In his complaint and supplemental pleadings, Plaintiff alleges that from August 2, 2012, until August 14, 2012, Defendants deprived him of due process and adequate access to the courts. Plaintiff states that on August 14, 2012, he discovered that Defendants maintained one set of books for African Americans and another different set for other prisoners.  Plaintiff asserts that this is being done to further a scheme whereby African American men are being wrongfully imprisoned.

As evidence that there are books in the law library which are only available to law library clerks, Plaintiff a copy of a step I grievance and response on this issue, in which prisoner Davis asserts that he was denied law books.  The step I response states:

> The only law books in the MBP law library that are not circulated to GP [general population] prisoners are the indexes in the USCA and MCLA titles.  These books were acquired through a prison closure and are not required.  The books are used by library staff and the law clerks to assist Level I and segregation prisoners with their legal research needs, since such prisoners do not have direct access to the law collection as GP prisoners do.  If damaged, the books are not replaceable and are therefore not circulated.

(Plaintiff's Exhibit A, docket #1-1.)

Plaintiff states that he had been visiting the law library four to six hours a week in order to research the filing of non-frivolous claims.  Plaintiff had been reading books entitled *Popular Names and Titles* and *Federal Citation and Statutes*.  Plaintiff alleges that Defendants Masker and Hawkins prevented Plaintiff from reading these books, telling him that they were only

available to law clerks, who all happen to be white.  Plaintiff states that this violated the requirement that similarly situated people be treated alike.

Subsequently, a new prisoner law clerk who was unaware that Defendants had been "culling" law books to prevent black prisoners from reading them allowed Plaintiff to read whatever book he requested.  However, Defendant Hawkins eventually discovered the new law clerk handing Plaintiff a book, and snatched the book away, saying "they are not allowed to see them books!"  Plaintiff complained to Defendants Hoffman and Younkins, who told him "y'all do not get to see every book in the law library."  Plaintiff asked why white inmates get to see the books, since all law clerks are white, but that black prisoners are not allowed to read or possess the books.  Plaintiff was told to stop talking and when he persisted, he was ordered to leave the library.  Defendant Maskers imposed a 30 day law library restriction on Plaintiff without giving him a hearing.

Plaintiff states that during the restriction, he was not provided with any books that he requested during the restriction and that his attempt to seek relief by filing a 42 U.S.C. § 2241 petition was denied.  *See Cromer, et al. v. United States of America, et al.*, Case No. 2:12-cv-399 (W.D. Mich. 2012).  Plaintiff states that MBP receives federal funds to operate the law library, but that Defendant Masker has "refused to staple case-law with the big staple provided by the federal government," or to allow prisoners to use the highlighter.  In addition, Defendant Masker has removed some of the chairs from the law library, stating that less prisoners meant less gang activity, removed the mirror from the bathroom, and implement a $5.00 fee for case law.  Plaintiff claims that Defendants' conduct impeded his ability to challenge his incarceration.

Plaintiff asserts that Defendants violated his rights under the First and Fourteenth Amendments and seeks compensatory and punitive damages.

- 3 -

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

- 4 -

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants' violated his right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an

inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an

access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

In this case, Plaintiff asserts that he is in prison for "absolutely no crime at all" and that he was unable to object to the dismissal of his 42 U.S.C. § 2241 case. However, this case was dismissed for failing to seek relief cognizable on habeas review. *See Cromer, et al. v. United States of America, et al.*, Case No. 2:12-cv-399 (W.D. Mich. 2012). Therefore, the underlying action did not assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Accordingly, Plaintiff's access to courts claim is properly dismissed.

Plaintiff also claims that Defendants' refusal to allow him to possess certain books violated his equal protection rights because he is African American, and the law clerks who were allowed to use the books all happen to be Caucasian. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, the court notes that Plaintiff is not similarly situated to individuals who are employed as law clerks in the prison law library. Therefore, Plaintiff's equal protection claims are properly dismissed.

Finally, Plaintiff claims that the 30 day law library restriction violated his due process rights because he did not receive a hearing. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

- 8 -

As compared to prisoners in the general population, a prisoner in administrative segregation has restricted use of the telephone, less exercise, no direct access to the law library, limited visiting hours, no participation in group activities, no eligibility for work assignments, and has to wear handcuffs and belly chains when out of his cell. *Rodgers v. Johnson*, 56 Fed. Appx. 633, 636 (6th Cir., Dec. 16, 2002).  The court concludes that the mere imposition of a 30 day law library restriction does not constitute an atypical and significant hardship. *See Sandin,* 515 U.S. at 484.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>April 9, 2013</u>                              /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE